

**PORTLAND MAIN OFFICE**
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1000
www.usdoj.gov/usao/or

Meredith D.M. Bateman
Robert Trisotto
Assistant U.S. Attorneys
Meredith.Bateman@usdoj.gov
Robert.Trisotto@usdoj.gov
(503) 727-1141
*Reply to Portland Office*

**U.S. DEPARTMENT OF JUSTICE**
United States Attorney's Office
District of Oregon
Natalie Wight
United States Attorney

**EUGENE BRANCH**
405 E 8th Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771

**MEDFORD BRANCH**
310 West Sixth Street
Medford, Oregon 97501
(541) 776-3564

January 14, 2025

**VIA EMAIL ONLY**
Guadalupe Valencia
Amy Potter
101 F Street #309
San Diego, CA 92101
gvalencialaw@yahoo.com
amy@angelilaw.com

    Re:    *United States v. Eric Karnezis*, Case No. 3:23-cr-00067-IM-1
           Plea Agreement Letter

Dear Counsel:

1. **Parties/Scope**: This plea agreement is between this United States Attorney's Office (USAO) and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This agreement does not apply to any charges other than those specifically mentioned in this agreement.

2. **Charges**: The defendant agrees to plead guilty to Count 1 of the Superseding Indictment filed in this matter, which charges Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349. Defendant also admits the first forfeiture allegation in the Superseding Indictment.

3. **Penalties**: The maximum penalties for Conspiracy to Commit Wire Fraud, as charged in Count 1 of the Superseding Indictment, are 20 years' imprisonment, a fine of $250,000 (or twice the gross pecuniary gains or losses resulting from the offense if such amount exceeds $250,000), 3 years of supervised release, and a $100 fee assessment. Defendant agrees to pay the fee assessment on the day of sentencing or explain to the satisfaction of the Court why this cannot be done.

4. **Dismissal/No Prosecution**: The USAO will move at the time of sentencing to dismiss any remaining charges in the Superseding Indictment. The USAO also agrees to forgo any additional charges against defendant resulting from this investigation, if, first, all of the essential facts underlying such charges are known to the USAO at the time of this agreement and, second, defendant is convicted and sentenced in conformity with this agreement.

Guadalupe Valencia
Amy Potter
Page 2

---

5.    **Sentencing Factors**: The parties agree that the Court must first determine the applicable advisory guideline range, then determine a reasonable sentence considering that range and the factors listed in 18 U.S.C. § 3553(a). Where the parties agree that sentencing factors apply, such agreement constitutes sufficient proof to satisfy the applicable evidentiary standard.

6.    **Elements of the Offenses**: For defendant to be found guilty of Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349, the United States must prove the following elements beyond a reasonable doubt:

    A.    First, there was an agreement between two or more persons to commit the crime of Wire Fraud; and

    B.    Second, the defendant became a member of that conspiracy knowing of its object and intending to help accomplish it.

To prove Wire Fraud, in violation of Title 18, United States Code, Section 1343, the United States must prove the following elements beyond a reasonable doubt:

    A.    First, the defendant knowingly participated in, devised or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations or promises;

    B.    Second, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

    C.    Third, defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

    D.    Fourth, defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

    The defendant stipulates that the evidence of his relevant conduct summarized in paragraph 7 establishes each of these elements as to Count 1 in the Superseding Indictment beyond any reasonable doubt.

7.    **Factual Basis**: Defendant agrees that the United States could prove the following facts at trial beyond a reasonable doubt.

**I.    Defendant Conspired to Submit Fraudulent PPP Loan Applications**

    a. Beginning on a date unknown and continuing until at least March 2022, there was an agreement between defendant and co-conspirators known and unknown, including Fredrico Williams ("Williams"), Lynisha Wells ("Wells"), and Nikkia

Guadalupe Valencia
Amy Potter
Page 3

---

Bennett ("Bennett"), to fraudulently obtain funds under the Paycheck Protection Program ("PPP"). Defendant joined in that agreement knowing of its purpose and intending to help accomplish that purpose.

b. Specifically, defendant conspired with recruiters to gather false and fraudulent business information from applicants for defendant to submit at least 350 fraudulent PPP applications on behalf of the applicants through Blueacorn, a lender service provider, to Capital Plus Financial, a lender participating in the PPP. The false and fraudulent business information included misrepresentations about the existence of the businesses, gross revenues, payroll amounts, and the number of employees.

c. Defendant also conspired with Nathan Reis and Stephanie Hockridge, the co-founders and co-owners of Blueacorn, among others, to submit these fraudulent applications.

d. Williams was a recruiter for defendant who was responsible for providing false and fraudulent business information to defendant.

e. Wells and Bennett were applicants whom Williams recruited.

f. Based on the misrepresentations in at least 350 fraudulent PPP applications, Capital Plus Financial funded at least $60,000,000 in loans.

g. Defendant required applicants to pay him a fee for his role in the conspiracy. Applicants paid defendant approximately $3,000,000 for submitting the fraudulent applications.

h. Between March 4, 2021 and March 19, 2021, defendant submitted two fraudulent PPP applications on Williams' behalf. These applications were submitted using servers in Oregon and then routed to servers in Virginia. Based on the misrepresentations in these applications, Capital Plus Financial approved the loans and funded $293,694 to Williams. Williams paid defendant approximately $10,000 for his role in securing the loans. The SBA paid lender fees and interest totaling $17,173.57 for these loans.

i. Between March 13, 2021 and April 5, 2021, defendant submitted two fraudulent PPP applications on Wells' behalf. These applications were submitted using servers in Oregon and then routed to servers in Virginia. Based on the misrepresentations in these applications, Capital Plus Financial approved the loans and funded $292,190 to Wells. Wells paid Williams $45,000 for his role in securing the loans and approximately $15,000 of that amount was paid to defendant. The SBA paid lender fees and interest totaling $15,829.80 for these loans.

Guadalupe Valencia
Amy Potter
Page 4

j. Between March 30, 2021 and May 5, 2021, defendant submitted three fraudulent PPP applications on Bennett's behalf. These applications were submitted using servers in Oregon and then routed to servers in Virginia. These three applications attempted additional PPP funding totaling $2,341,172 but were denied. Bennett agreed to pay defendant approximately $117,000 but did not pay.

## II. Defendant Submitted His Own Fraudulent PPP Loan Applications

a. Between February 3, 2021 and October 7, 2021, defendant submitted six fraudulent PPP applications and five fraudulent PPP forgiveness applications on his own behalf to Capital Plus Financial. All of these applications were submitted using servers in Oregon and then routed to servers in Virginia.

b. On February 3, 2021, defendant submitted a fraudulent application for Elevated Research on which he misrepresented Elevated Research's business establishment date, number of employees, and average monthly payroll. To support the misrepresentations, defendant submitted a fraudulent IRS Form 940 for 2020. Based on the misrepresentations, Capital Plus Financial funded $146,500 to defendant's bank account, which defendant spent on personal expenses. Defendant later submitted a fraudulent forgiveness application on which he misrepresented he spent the entire loan on payroll, and the SBA paid off the loan principal and interest. The SBA paid lender fees totaling $7,325 and interest paid on the forgiveness application totaled an additional $1,062.12.

c. On or about February 5, 2021, defendant submitted a fraudulent application for Karnezis Consulting on which he misrepresented Karnezis Consulting's business establishment date, number of employees, and average monthly payroll. To support the misrepresentations, defendant submitted a fraudulent IRS Form 940 for 2020. Based on the misrepresentations, Capital Plus Financial funded $103,660 to defendant's bank account, which defendant spent on personal expenses. Defendant later submitted a fraudulent forgiveness application on which he misrepresented he spent the entire loan on payroll, and the SBA paid off the loan principal and interest. The SBA paid lender fees totaling $5,183 and interest paid on the forgiveness application totaled an additional $731.

d. On or about February 14, 2021, defendant submitted a fraudulent application for Eric Karnezis d/b/a Eric Karnezis on which he misrepresented "Eric Karnezis'" business establishment date, number of employees, and average monthly payroll. To support the misrepresentations, defendant submitted a fraudulent IRS Form 1040 Schedule C for 2020. Based on the misrepresentations, Capital Plus Financial funded $20,832 to defendant's bank account, which defendant used to open a new bank account. Defendant later submitted a fraudulent forgiveness application on which he misrepresented he spent the entire loan on payroll, and

    the SBA paid off the loan principal and interest. The SBA paid lender fees totaling $2,500 and interest paid on the forgiveness application totaled an additional $132.

  e. On May 1, 2021, defendant submitted fraudulent second draw PPP applications for Elevated Research, Karnezis Consulting, and Eric Karnezis d/b/a Eric Karnezis. On each of these three applications, defendant misrepresented the businesses' establishment dates, number of employees, and average monthly payroll. Defendant submitted fraudulent IRS Forms for each application. Based on the misrepresentations, Capital Plus Financial funded a total of $260,782 to defendant's bank accounts. Defendant spent most of these funds on personal expenses.

  f. On October 7, 2021, defendant submitted two fraudulent forgiveness applications for the second draw loans to Elevated Research and Karnezis Consulting on which he misrepresented he spent the entire loans on payroll, and the SBA paid off the loan principals and interest. The SBA paid lender fees totaling $11,998, and interest paid on the forgiveness applications totaled an additional $1,025.69.

8. **Relevant Conduct:** The parties agree that the following sentencing guidelines calculations are correct. The parties make no agreement regarding defendant's criminal history category but estimate that he is in category I.

| Guideline Section | Offense Level |
|---|---|
| Base Offense Level – USSG § 2B1.1(a)(1) | 7 |
| Loss of at least $25,000,000 but not more than $65,000,000 – USSG § 2B1.1(b)(1)(L) | +22 |
| Use of Sophisticated Means – USSG § 2B1.1(b)(10) | +2 |
| Aggravating Role – USSG § 3B1.1(c) | +2 |
| Acceptance of Responsibility – USSG § 3E1.1 | -3 |
| Recommended Downward Variance | -4 |
| Total | 26 |

  The parties reserve the right to argue that additional specific offense characteristics under the Sentencing Guidelines are appropriate.

9. **Acceptance of Responsibility:** The defendant must demonstrate to the Court that defendant fully admits and accepts responsibility under U.S.S.G. § 3E1.1 for defendant's unlawful conduct in this case. If defendant does so, the USAO will recommend a three-level reduction in defendant's offense level. The USAO reserves the right to change this recommendation if defendant, between plea and sentencing, commits any criminal offense, obstructs or attempts to obstruct justice as explained in U.S.S.G. § 3C1.1, or acts inconsistently with acceptance of responsibility as explained in U.S.S.G. § 3E1.1.

Guadalupe Valencia
Amy Potter
Page 6

10. **Waiver of Full Discovery:** As a material term of this offer and agreement, defendant expressly accepts the USAO's offer to make available the evidence gathered in the investigation of this matter for on-site inspection and the USAO's production of limited discovery as of the date of this agreement in full satisfaction of the United States' discovery obligations in this case. Defendant knowingly, intelligently, and voluntarily waives his rights to further production of evidence or information from the United States, even though he may be entitled to such production under the Federal Rules of Criminal Procedure, the discovery orders of the Court, and any prior demands for discovery.

11. **Recommendation of 4-Level Downward Variance and Low-End Sentence:** In consideration of defendant's waiver of substantive motions, rights of appeal, collateral attack, and full discovery, his prompt acceptance of responsibility as described in paragraph 9, *supra*, and his compliance with all other terms of this agreement, the USAO will recommend a downward variance of four levels.

12. **Sentencing Recommendation:** The USAO will recommend the low-end of the applicable guideline range as long as defendant demonstrates an acceptance of responsibility as explained above. For purposes of this agreement, the low-end of the applicable guideline range is that defined by the Sentencing Table in USSG Chapter 5, Part A, as determined by the Court at sentencing. Defendant may seek any lawful sentence. There is no agreement on the length of any term of supervised release.

13. **Additional Departures, Adjustments, or Variances:**

    Defendant reserves the right to seek a downward departure, adjustment, or variance from the applicable sentencing guideline range determined by the Court and understands that the government reserves its right to oppose such a request.

    Defendant agrees that, should defendant seek a downward departure, adjustment, or variance from the applicable guideline range determined by the Court and Probation Office, defendant will provide the government with notice of: (1) the factual basis for such request; (2) any evidence defendant intends to introduce or rely upon at the sentencing hearing; and (3) any witnesses, including expert witnesses, defendant intends to call or rely upon at the sentencing hearing. Such notice must be provided to the government no later than the Wednesday prior to the week during which the sentencing hearing is scheduled. Defendant agrees that if defendant fails to comply with this notice requirement, defendant will not oppose a government motion for a postponement of the sentencing hearing.

14. **Waiver of Appeal/Post-Conviction Relief:** Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that: (1) the sentence imposed exceeds the statutory maximum, (2) the Court arrives at an advisory sentencing guideline range by applying an upward departure under the provisions of Guidelines Chapters 4 or 5K, or (3) the Court exercises its discretion under 18 U.S.C.

Guadalupe Valencia
Amy Potter
Page 7

§ 3553(a) to impose a sentence exceeding the advisory guideline sentencing range as determined by the Court at the time of sentencing without required notice to the parties. Should defendant seek an appeal despite this waiver, the USAO may take any position on any issue on appeal and may pursue any charges forgone pursuant to this agreement. Defendant also waives the right to file any collateral attack, including a motion under 28 U.S.C. § 2255, challenging any aspect of the conviction or sentence on any grounds, except on grounds of ineffective assistance of counsel, and except as provided in Fed. R. Crim. P. 33 and 18 U.S.C. § 3582(c)(2).

Defendant expressly agrees that these waivers shall remain effective if the USAO alters its sentencing recommendation consistent with the terms of this agreement or because defendant otherwise breaches this agreement.

15. **Full Disclosure/Reservation of Rights**: The USAO will fully inform the PSR writer and the Court of the facts and law related to defendant's case. Except as set forth in this agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

16. **Court Not Bound**: The Court is not bound by the recommendations of the parties or of the presentence report (PSR) writer. Because this agreement is made under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, defendant may not withdraw any guilty plea or rescind this plea agreement if the Court does not follow the agreements or recommendations of the parties.

17. **Payment of Full Restitution**: Defendant agrees to an order of full restitution to all victims of the offenses of conviction and his relevant conduct pursuant to 18 U.S.C. §§ 3663 and 3663A. Defendant agrees the Court is required and shall impose an order of restitution in an amount to be determined, but that amount will be not less than $25,000,000 and not more than $65,000,000. Pursuant to 18 U.S.C. § 3664(d)(5), should the parties be unable to reach an agreed upon restitution amount 10 days prior to sentencing, the Government will inform the Court and a restitution hearing will be set not to exceed 90 days after sentencing.

Defendant agrees fully to disclose all assets in which defendant has any interest or over which defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party. Defendant agrees to truthfully complete the Financial Disclosure Statement provided herein by the earlier of fourteen days from defendant's signature on this plea agreement or the date of defendant's entry of a guilty plea, sign it under penalty of perjury, and provide it to both the USAO and the United States Probation Office. Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances.

Defendant expressly authorizes the USAO to obtain a credit report on defendant. Defendant agrees to provide waivers, consents, or releases requested by the USAO to access

records to verify the financial information. Defendant also authorizes the USAO to inspect and copy all financial documents and information held by the U.S. Probation Office.

The parties agree that defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute defendant's failure to accept responsibility under USSG § 3E1.1.

### Transfer of Assets

Defendant agrees to notify the Financial Litigation Unit of the USAO before defendant transfers any interest in property with a value exceeding $1000 owned directly or indirectly, individually or jointly, by defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

### Restitution

The Court shall order restitution to each victim in the full amount of each victim's losses as determined by the Court, but that amount will be not less than $25,000,000 and not more than $65,000,000. Defendant agrees to pay restitution for all losses caused by defendant's relevant conduct, regardless of whether the Indictment alleges such conduct.

Defendant understands and agrees that the total amount of any monetary judgment that the Court orders defendant to pay will be due. Defendant further understands and agrees that pursuant to 18 U.S.C. § 3614, defendant may be resentenced to any sentence which might have originally been imposed if the court determines that defendant has knowingly and willfully refused to pay a fine or restitution as ordered or has failed to make sufficient bona fide efforts to pay a fine or restitution. Additionally, defendant understands and agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to 18 U.S.C. §§ 3572, 3613, and 3664(m), notwithstanding any initial or subsequently modified payment schedule set by the court. Defendant understands that any monetary debt defendant owes related to this matter may be included in the Treasury Offset Program to potentially offset defendant's federal retirement benefits, tax refunds, and other federal benefits.

Pursuant to 18 U.S.C. § 3612(b)(1)(F), defendant understands and agrees that until a fine or restitution order is paid in full, defendant must notify the USAO of any change in the mailing address or residence address within 30 days of the change. Further, pursuant to 18 U.S.C. § 3664(k), defendant shall notify the Court and the USAO of any material change in defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts, or any other acquisition of assets or money.

///

///

Guadalupe Valencia
Amy Potter
Page 9

18. **Forfeiture Terms:**

   A. **Assets and Authority:** By signing this agreement, defendant knowingly and voluntarily forfeits all right, title, and interest in and to all assets which are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), including all property listed in the Bill of Particulars filed in this case (ECF No. 44), which defendant admits is property, real or personal, which constitutes or is derived from proceeds traceable to the violations set forth in Count 1 of the Superseding Indictment.

   B. **Agreement to Civil Forfeiture:** Defendant agrees not to file a claim or petition or to withdraw any claim or petition already filed to any of the listed property in any civil proceeding, administrative or judicial, which has been initiated. Defendant further waives the right to notice of any forfeiture proceeding involving this property and agrees not to assist others in filing a claim in any forfeiture proceeding.

   C. **No Alteration or Satisfaction:** Defendant knowingly and voluntarily waives the right to a jury trial on the forfeiture of assets. Defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets, including any claim or defense under the Eighth Amendment to the United States Constitution, and any rights under Rule 32.2 of the Federal Rules of Criminal Procedure. Defendant further agrees forfeiture of defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon defendant in addition to forfeiture.

   D. **Title Assistance:** Defendant agrees to fully assist the USAO in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title to the United States, including but not limited to surrender of title and execution of any documents necessary to transfer defendant's interest in any of the above property to the United States, and assist in bringing any assets located outside the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture.

   E. **Assets Not Identified:** The USAO reserves its right to proceed against any remaining assets not identified either in this agreement or in the civil actions which are being resolved along with this plea of guilty, including any property in which defendant has any interest or control, if said assets, real or personal, tangible or intangible, are subject to forfeiture.

   F. **Final Order of Forfeiture:** Defendant agrees not to contest entry of a Final Order of Forfeiture reflecting these forfeiture terms at the conclusion of the criminal case.

19. **Breach of Plea Agreement:** If defendant breaches the terms of this agreement or commits any new criminal offenses between signing this agreement and sentencing, the USAO is

Guadalupe Valencia
Amy Potter
Page 10

---

relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea or rescind his waivers of appeal and post-conviction relief, as described in paragraph 13, *supra*.

If defendant believes that the United States has breached the plea agreement, defendant must raise any such claim before the district court, either prior to or at sentencing. If defendant fails to raise a breach claim in district court, defendant has waived any such claim and shall be precluded thereby from raising a breach claim for the first time on appeal.

20. **Memorialization of Agreement**: No promises, agreements, or conditions other than those set forth in this agreement will be effective unless memorialized in writing and signed by all parties listed below or confirmed on the record before the Court. If defendant accepts this offer, please sign and attach the original of this letter to the Petition to Enter Plea.

21. **Deadline**: This plea offer expires if not accepted and signed by defendant and counsel and received by the USAO by 5:00 p.m. PST on February 10, 2025.

Sincerely,

NATALIE WIGHT
United States Attorney

/s/ *Meredith D.M. Bateman*
MEREDITH D.M. BATEMAN
ROBERT TRISOTTO
Assistant United States Attorneys

I have carefully reviewed every part of this agreement with my attorney. I understand and voluntarily agree to its terms. I expressly waive my rights to appeal as outlined in this agreement. I wish to plead guilty because, in fact, I am guilty.

1/25/25
Date

Eric Karnezis, Defendant

I represent the defendant as legal counsel. I have carefully reviewed every part of this agreement with defendant. To my knowledge, defendant's decisions to make this agreement and to plead guilty are informed and voluntary ones.

1/25/25
Date

Guadalupe Valencia
Amy Potter
Attorneys for Defendant